**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

———————————————————————

IN RE SUBPOENA OF JAMES COMEY BY )
AUTHORITY OF THE HOUSE OF )  Case No. 18-mc-174-TNM
REPRESENTATIVES OF THE CONGRESS OF THE )
UNITED STATES OF AMERICA )

———————————————————————

**RESPONSE OF THE COMMITTEE ON THE JUDICIARY OF THE U.S. HOUSE OF
REPRESENTATIVES IN OPPOSITION TO JAMES B. COMEY'S MOTION TO
QUASH AND MOTION FOR A STAY**

THOMAS G. HUNGAR
 *General Counsel*
TODD B. TATELMAN
 *Deputy General Counsel*
KIMBERLY HAMM
 *Associate General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C.  20515
(202) 225-9700 (telephone)
Thomas.Hungar@mail.house.gov

*Counsel for the Committee on the Judiciary of the
U.S. House of Representatives*

November 30, 2018

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ............................................................................................................1

BACKGROUND .............................................................................................................2

ARGUMENT .................................................................................................................4

I.     THE MOTION TO QUASH IS PROCEDURALLY DEFECTIVE ...................................4

II.    THE SPEECH OR DEBATE CLAUSE PRECLUDES THE RELIEF SOUGHT
      BY MR. COMEY ...................................................................................................6

      A.  The Speech or Debate Clause Immunizes Legislative Acts From
          Judicial Review...................................................................................................6

      B.  The Issuance of Congressional Subpoenas Is A "Legislative Act"
          Within the Scope Of The Speech Or Debate Clause. ...................................................7

      C.  The Subpoena To Mr. Comey Is Absolutely Protected By The Clause. .......................9

III.   THE RULEMAKING CLAUSE PRECLUDES THIS ACTION ....................................13

IV.   IN ANY EVENT, THE COMMITTEE'S SUBPOENA IS VALID ...............................15

      A.  The Committee's Subpoena Seeks Information In
          Furtherance Of A Valid Legislative Purpose.............................................................15

      B.  The Committee's Subpoena Is Fully In Accordance With House And Committee
          Rules ...............................................................................................................17

V.    THE COMMITTEE'S SUBPOENA ADVANCES THE PUBLIC INTEREST...............18

CONCLUSION.............................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Barr v. Matteo*,
    360 U.S. 564 (1959) ......................................................................................................7

*Boron Oil v. Downie*,
    873 F.2d 67 (4th Cir. 1989) ........................................................................................5

*Brown & Williamson Tobacco Corp. v. Williams*,
    62 F.3d 408 (D.C. Cir. 1995) ......................................................................................9

*Clark v. Library of Congress*,
    750 F.2d 89 (D.C. Cir. 1984) ......................................................................................5

*Comm. on Judiciary v. Miers*,
    558 F. Supp. 2d 53 (D.D.C. 2008) ........................................................................2, 18

*Consumers Union of U.S., Inc. v. Periodical Correspondent' s Ass' n*,
    515 F.2d 1341 (D.C. Cir. 1975) ................................................................................14

*Doe v. McMillan*,
    412 U.S. 306 (1973) ..................................................................................................7, 9

*\*Eastland v. U.S. Servicemen's Fund*,
    421 U.S. 491 (1975) .............................................1, 6, 7, 8, 9, 10, 11, 12, 13, 16

*\*Exxon Corp. v. FTC*,
    589 F.2d 582 (D.C. Cir. 1978) ..................................................................................19

*Gravel v. United States*,
    408 U.S. 606 (1972) ....................................................................................................6

*Harrington v. Bush*,
    553 F.2d 190 (D.C. Cir. 1977) ..................................................................................15

*Helstoski v. Meanor*,
    442 U.S. 500 (1979) ..........................................................................................6, 7, 12

*Hutcheson v. United States*,
    369 U.S. 599 (1962) ..................................................................................................13

*Ishler v. Internal Revenue*,
    237 F. App'x 394 (11th Cir. 2007) ............................................................................5

*Jackson v. United States*,
    751 F.3d 712 (6th Cir. 2014) ........................................................................5

*Keener v. Congress*,
    467 F.2d 952 (5th Cir. 1972) ........................................................................5

*Kilbourn v. Thompson*,
    103 U.S. 168 (1880)........................................................................................7

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936)........................................................................................5

*McGrain v. Daugherty*,
    273 U.S. 135, (1927)...........................................................................8, 11, 19

*Miller v. Transam. Press, Inc.*,
    709 F.2d 524 (9th Cir. 1983) ........................................................................9

*MINPECO, S.A. v. Conticommodity Servs., Inc.*,
    844 F.2d 856 (D.C. Cir. 1988) .....................................................................9

*NLRB v. Canning*,
    134 S. Ct. 2550, 2574 (2014) ......................................................................14

*Porteous v. Baron*,
    729 F. Supp. 2d 158 (D.D.C. 2010) ............................................................9

*Rangel v. Boehner*,
    20 F. Supp. 3d 148 (D.D.C. 2013) ............................................................14

*Rhines v. Walker*,
    544 U.S. 269 (2005)........................................................................................5

*Rockefeller v. Bingaman*,
    234 F. App'x 852 (10th Cir. 2007) ..............................................................5

*Tenney v. Bradhove*,
    341 U.S. 367 (1951).............................................................................9, 10 ,12

*United States v. Ballin*,
    144 U.S. 1 (1892)...................................................................................14, 17

*United States v. Biaggi*,
    853 F.2d 89 (2d Cir. 1988)......................................................................10, 11

*United States v. Dowdy*,
    479 F.2d 213 (4th Cir. 1973) .......................................................................11

*United States v. Helstoski*,
    442 U.S. 477 (1979)..........................................................................6, 7, 12

*United States v. Johnson*,
    383 U.S. 169 (1966)..................................................................................7, 8

*United States v. King*,
    395 U.S. 1 (1969).........................................................................................6

*United States v. Peoples Temple of the Disciples of Christ*,
    515 F. Supp. 246 (D.D.C. 1981) ...................................................................9

*United States v. Rostenkowski*,
    59 F.3d 1291 (D.C. Cir. 1995) ...................................................................17

*United States v. Sherwood*,
    312 U.S. 584 (1941) .....................................................................................5

*Watkins v. United States*,
    354 U.S. 178 (1957)..............................................................................1, 12

## Constitution, Statutes, and Federal Rules

U.S. Const. art. I, § 5, cl. 2.............................................................................13

U.S. Const. art. I, § 6, cl. 1..........................................................................6, 7

Fed. R. Civ. P. 3 ...............................................................................................4

Fed. R. Civ. P. 8(a) ..........................................................................................4

## Legislative Sources

*H. Res. 5, § 3(b)(1) (115th Cong. 2017)........................................................14

Rules of the U.S. House of Representatives (115th Cong.)
    Rule X, cl. 1(l)..........................................................................................2
    Rule X, cl. 2(d) .........................................................................................2

**<u>Other Sources</u>**

Press Release, H. Comm. on the Judiciary, *Goodlatte, Gowdy Open Investigation into Decisions Made by DOJ in 2016* (Oct. 24, 2017) ............................................................................3

Statement of James B. Comey, Director, Fed. Bureau of Investigation, Hearing on Oversight of the Federal Bureau of Investigation Before the H. Comm. on the Judiciary (Oct. 22, 2015)...................................................................................................................................2

James Comey (@Comey), Twitter, https://twitter.com/Comey ...................................................17

## INTRODUCTION

Without even bothering to cite controlling adverse authority or follow the most basic procedural requirements for initiating a new civil action, Mr. Comey brazenly demands that this Court issue an order quashing a congressional subpoena directed to him – a request for relief so extraordinary and frivolous that, as far as undersigned counsel is aware, no district court in the history of the Republic has ever granted such a request.  Although one would not know it from reading Mr. Comey's papers, the Supreme Court has spoken unequivocally on this question: "the Speech or Debate Clause provides complete immunity … for issuance of this subpoena." *Eastland v. U. S. Servicemen's Fund*, 421 U.S. 491, 507 (1975).  Mr. Comey cannot evade the Supreme Court's squarely controlling precedent by failing to cite it.

Putting aside the procedural and constitutional infirmities of Mr. Comey's ill-conceived litigation, Mr. Comey has identified no colorable basis to object to his deposition.  Instead, he wishes to dictate the terms of his appearance by demanding a public hearing.  "It is unquestionably the duty of all citizens" – including Mr. Comey – "to cooperate with the Congress," and it is his "unremitting obligation to respond to subpoenas, to respect the dignity of the Congress and its committees and to testify fully with respect to matters within the province of proper investigation." *Watkins v. United States*, 354 U.S. 178, 187-88 (1957).  Try as he might, Mr. Comey may not condition his cooperation with a congressional investigation on the presence of television cameras.  No other witness involved in this investigation has made such a grandiose demand, and this Court should not countenance Mr. Comey's temerity in attempting to dictate the terms on which he will deign to comply with his constitutional obligations.

**BACKGROUND**

The House Committee on the Judiciary ("Committee") has been a standing committee of the U.S. House of Representatives since 1813.  It is vested with the authority, among other things, to oversee the administration of justice within the federal courts, administrative agencies, and federal law enforcement entities.  House Rule X, cl. 1(l).  The Committee's Oversight Plan for the 115th Congress, adopted pursuant to House Rule X, cl. 2(d), includes "review [of] the mission and operations of all agencies and programs within its jurisdiction as it prepares to reauthorize components of the Department[] of Justice," as well as oversight and investigative activities into the Department of Justice ("DOJ"), "including all Department components and agencies."  Comm. on the Judiciary Authorization and Oversight Plan at 13 (Feb. 15, 2017).[1] With respect to the FBI specifically, the Committee's "leadership" and "support" play an important role in ensuring the Bureau meets its mission.  *See* Statement of James B. Comey, Director, Fed. Bureau of Investigation, Hearing on Oversight of the Federal Bureau of Investigation Before the H. Comm. on the Judiciary (Oct. 22, 2015).[2]

Partisanship at DOJ has long been a concern of Congress.  Indeed, the last Committee subpoena that was the subject of litigation involved concerns that "partisan political considerations at the Department of Justice … undermined the fair and impartial administration of the federal criminal justice system."  Comm. Mot. for Partial Summ. J. (ECF 14) at 1, *Comm. on Judiciary v. Miers*, 558 F. Supp. 2d 53 (D.D.C. 2008) (No. 08-cv-409).  Nearly a decade later, Congress has been forced to confront those concerns again.  Specifically, in the months leading

---

[1] *Available at* https://judiciary.house.gov/wp-content/uploads/2013/07/1551_001.pdf.

[2] *Available at* https://judiciary.house.gov/wp-content/uploads/2016/02/FBI05.doc.pdf.

up to the 2016 presidential election, DOJ engaged in several actions that are a matter of intense public interest and debate, including:

- The "FBI's decision to publicly announce the investigation into Secretary Clinton's handling of classified information but not to publicly announce the investigation into campaign associates of then-candidate Donald Trump";

- The "FBI's decision to notify Congress by formal letter of the status of the investigation both in October and November of 2016";

- The "FBI's decision to appropriate full decision making in respect to charging or not charging Secretary Clinton to the FBI rather than the DOJ"; and

- The "FBI's timeline in respect to charging decisions."

*See* Press Release, H. Comm. on the Judiciary, *Goodlatte, Gowdy Open Investigation into Decisions Made by DOJ in 2016* (Oct. 24, 2017).[3]

Consistent with the Committee's Oversight Plan and its jurisdiction under House Rules, on October 24, 2017, the Committee opened a joint investigation with the House Committee on Oversight and Government Reform ("OGR") into these 2016 actions by DOJ and the FBI. Somers Decl. ¶ 3.  As part of this joint investigation, the Committee has interviewed or deposed 16 witnesses and reviewed numerous records.  Somers Decl. ¶ 5.  Now that the Committee has largely concluded the interviews of lower-level FBI personnel, it is imperative that the Committee speak with Mr. Comey, the former FBI Director, to conclude its investigation and report its findings to the American people by the close of the 115th Congress.  Somers Decl. ¶¶ 6-9.

On September 10, 2018, Committee staff contacted Mr. Comey's counsel to request an interview, at which time counsel was informed about the scope of the investigation.  On September 21, 2018, Chairmen Goodlatte and Gowdy reiterated their request by letter to Mr.

---

[3] *Available at* https://judiciary.house.gov/press-release/goodlatte-gowdy-open-investigation-decisions-made-doj-2016/.

Comey's counsel.  Somers Decl. ¶ 10.  Counsel indicated that Mr. Comey would not agree to an

interview and demanded a hearing instead.  Somers Decl. ¶ 11.  On November 16, the

Committee informed counsel that Mr. Comey must appear for a deposition.  Somers Decl. ¶ 12.

Following further discussions between the parties, the Committee informed Mr. Comey's

counsel that the deposition date would be the week of December 3.  *Id.*  This date was chosen to

accommodate a personal commitment of Mr. Comey.  *Id.*  The subpoena was formally issued by

the Committee on November 21.  Somers Decl. ¶ 13.

Unfortunately, Mr. Comey has refused to cooperate with the Committee's investigation

unless it accedes to his unreasonable and baseless attempt to dictate the procedures to be

followed by the Committee.  Specifically, Mr. Comey objects to his appearance at a "closed-door

deposition," insisting that he prefers to appear at a public hearing.  *See* Mot. to Quash at 1-2.  For

this reason, he has filed the instant motions to quash and stay his pending deposition.

## ARGUMENT

### I.   THE MOTION TO QUASH IS PROCEDURALLY DEFECTIVE

Mr. Comey's motion to quash suffers from numerous procedural defects that compel its

summary denial.

First, Mr. Comey's filing fails to comport with Rule 3 of the Federal Rules of Civil

Procedure, which requires that civil actions be "commenced by filing a complaint with the

court."  Fed. R. Civ. P. 3.  Relatedly, Mr. Comey has failed to satisfy the requirements of Rule 8,

as his papers do not contain a "short and plain statement of the grounds for the court's

jurisdiction," or a "short and plain statement of the claims showing that the pleader is entitled to

relief."  Fed. R. Civ. P. 8(a)(1), (2).  Mr. Comey appears to be operating on the misguided

assumption that he need not comply with the requirements for commencing a civil action

because he is challenging a subpoena, but the subpoena he is attempting to quash is not a grand

jury or civil discovery subpoena issued under the authority of the Court; rather, it is a congressional subpoena issued under the constitutional authority of a separate and co-equal branch of government.  Given the absence of any statute, rule, or other provision of law authorizing this form of proceeding or establishing the jurisdiction of this Court over a congressional subpoena, Mr. Comey's motion is entirely improper and baseless.[4]

In addition, Mr. Comey's motion to quash is barred by the doctrine of sovereign immunity.  "The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."  *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (citations omitted); *see also Jackson v. United States*, 751 F.3d 712, 716 (6th Cir. 2014).  This immunity extends to the House and Senate as institutions, as well as their component parts such as congressional committees.  *See Rockefeller v. Bingaman*, 234 F. App'x 852, 855 (10th Cir. 2007) ("[S]overeign immunity forecloses [Plaintiff's] claims against the House of Representatives and Senate as institutions, and [against an individual Representative and Senator] as individuals acting in their official capacities." (quotation marks and citation omitted)); *Keener v. Congress*, 467 F.2d 952, 953 (5th Cir. 1972) (per curiam) (similar).[5]

---

[4] For this same reason, Mr. Comey's reliance on *Rhines v. Walker*, 544 U.S. 269 (2005) and *Landis v. N. Am. Co.*, 299 U.S. 248 (1936) are misplaced.  *See* Mot. to Stay at 1-2.  Both of those cases involved judicial authority over judicial processes, and not the entirely distinct question as to whether the courts may intrude into the constitutional processes of the Legislative Branch.

[5] These same principles also shield federal officials, including congressional Members and staff, when sued in their official capacities.  *See, e.g.*, *Ishler v. Internal Revenue*, 237 F. App'x 394, 397 (11th Cir. 2007) ("[T]he protection of sovereign immunity also generally extends to the employees of those agencies sued in their official capacities."); *Boron Oil Co. v. Downie*, 873 F.2d 67, 69 (4th Cir. 1989) ("[A]n action seeking specific relief against a federal official, acting within the scope of his delegated authority, is an action against the United States, subject to governmental privilege of immunity."); *Clark v. Library of Congress*, 750 F.2d 89, 102-04 (D.C.

Here, if Mr. Comey had actually filed a complaint and attempted to assert a cause of action, it would necessarily be against the congressional committee that issued the subpoena in question.  Sovereign immunity precludes the exercise of jurisdiction, absent an "unequivocally expressed" waiver of that immunity.  *United States v. King*, 395 U.S. 1, 4 (1969).  As Mr. Comey has failed to and cannot identify any such waiver of that immunity, much less an "unequivocally expressed" one, his motion to quash must be dismissed.

## II.   THE SPEECH OR DEBATE CLAUSE PRECLUDES THE RELIEF SOUGHT BY MR. COMEY

This Court lacks jurisdiction to grant the relief sought by Mr. Comey because the Committee's issuance of the challenged subpoena constitutes a legislative act absolutely protected against litigation challenge by the Speech or Debate Clause, U.S. Const. art. I, § 6, cl. 1.  As the Supreme Court explained in *Eastland v. U.S. Servicemen's Fund*,  "the Speech or Debate Clause provides complete immunity for … issuance of this subpoena."  421 U.S.at 507.

### A.     The Speech or Debate Clause Immunizes Legislative Acts From Judicial Review.

 "The purpose of the [Speech or Debate] Clause is to insure that the legislative function the Constitution allocates to Congress may be performed *independently* …. [T]he 'central role' of the Clause is to 'prevent intimidation of legislators by the Executive and accountability before a possibly hostile judiciary.'"  *Eastland*, 421 U.S. at 502 (emphasis added) (quoting *Gravel v. United States*, 408 U.S. 606, 617 (1972)); *see also United States v. Helstoski*, 442 U.S. 477, 491 (1979) ("This Court has reiterated the central importance of the Clause for preventing intrusion by [the] Executive and Judiciary into the legislative sphere.").  "In the American governmental structure the [C]lause serves the additional function of reinforcing the separation of powers so

---

Cir. 1984) (sovereign immunity bars suit for money damages against Library of Congress official acting in official capacity)

deliberately established by the Founders." *United States v. Johnson*, 383 U.S. 169, 178 (1966); *see also Helstoski*, 442 U.S. at 491 ("[The] purpose [of the Clause] was to preserve the constitutional structure of separate, coequal, and independent branches of government.").

Because "the guarantees of th[e Speech or Debate] Clause are vitally important to our system of government," they "are entitled to be treated by the courts with the sensitivity that such important values require." *Helstoski v. Meanor*, 442 U.S. 500, 506 (1979). Accordingly, the Supreme Court has repeatedly, and "[w]ithout exception, … read the Speech or Debate Clause broadly to effectuate its purposes." *Eastland*, 421 U.S. at 501; *see also Doe v. McMillan*, 412 U.S. 306, 311 (1973); *Gravel*, 408 U.S. at 617-18; *Johnson*, 383 U.S. at 179; *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1880).

The Speech or Debate Clause provides, *inter alia*, immunity from prosecutions or civil lawsuits with respect to any and all actions "within the 'legislative sphere.'" *McMillan*, 412 U.S. at 312-13 (quoting *Gravel*, 408 U.S. at 624-25). The Supreme Court has stated unequivocally that when the challenged "the actions of the [congressional defendants] fall within the 'sphere of legitimate legislative activity,'" they "'shall not be questioned in any other Place' about those activities since the prohibitions of the Speech or Debate Clause are absolute." *Eastland*, 421 U.S. at 501 (quoting *McMillan*, 412 U.S. at 312-13 and U.S. Const. art. I, § 6, cl. 1); *see also id.* at 503, 509 n.16; 509-10; *Gravel*, 408 U.S. at 623 n.14; *Barr v. Matteo*, 360 U.S. 564, 569 (1959).

### B.   The Issuance Of Congressional Subpoenas Is A "Legislative Act" Within The Scope Of The Speech Or Debate Clause.

Activities "within the 'legislative sphere,'" *McMillan*, 412 U.S. at 312-13 (quoting *Gravel*, 408 U.S. at 624-25), include all activities that are

> an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.

*Gravel*, 408 U.S. at 625; *accord Eastland*, 421 U.S. at 504.

The concept of "legislative activity" has been broadly construed to include much more than merely words spoken in debate. The "cases have plainly not taken a literalistic approach in applying the privilege. … Committee reports, resolutions, and the act of voting are equally covered[.]" *Gravel*, 408 U.S. at 617. Of particular relevance here, the Supreme Court has unambiguously held that the "power to investigate and to do so through compulsory process" is activity within the legislative sphere. *Eastland*, 421 U.S. at 504. This is so because "'[a] legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change.'" *Id.* (quoting *McGrain v. Daugherty*, 273 U.S. 135, 175 (1927)).

Thus, "[i]ssuance of subpoenas such as the one in question here has long been held to be a legitimate use by Congress of its power to investigate." *Eastland*, 421 U.S. at 504. Moreover, "[i]t also has been held that the subpoena power may be exercised by a committee acting, as here, on behalf of one of the Houses." *Id.* at 505. Accordingly, a committee's "issuance of a subpoena pursuant to an authorized investigation is … an indispensable ingredient of lawmaking," *id.*, and the Speech or Debate Clause therefore precludes litigation challenges to such subpoenas. *See id.* at 507 (Committee's "Members are immune because the issuance of the subpoena is 'essential to legislating'").

The Clause also bars any "inquiry into … the motivation for [legislative] acts." *United States v. Brewster*, 408 U.S. 501, 512 (1972); *see also Johnson*, 383 U.S. at 180, 184-85 (such

inquiry "necessarily contravenes the … Clause").  Thus, the Clause is not abrogated by allegations that a Legislative Branch official acted unlawfully or with an unworthy purpose.  *See, e.g.*, *McMillan*, 412 U.S. at 312-13 (Clause applies to all legislative activities "even though the[] conduct, if performed in other than legislative contexts, would in itself be unconstitutional or otherwise contrary to criminal or civil statutes"); *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951); *Porteous v. Baron*, 729 F. Supp. 2d 158, 166 (D.D.C. 2010).

Finally, this Circuit has consistently held that once the "legislative process" test is met, that is "the end of the matter."  *See MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856, 861 (D.C. Cir. 1988); *see also Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 418-19 (D.C. Cir. 1995) ("Once the legislative-act test is met, … the privilege is absolute." (quoting *Miller v. Transam. Press, Inc.*, 709 F.2d 524, 529 (9th Cir. 1983))); *United States v. Peoples Temple of the Disciples of Christ*, 515 F. Supp. 246, 249 (D.D.C. 1981) ("The Supreme Court has rarely spoken with greater clarity.  Once it is determined … that [the congressional individual or entity's] actions fall within the 'legitimate legislative sphere, judicial inquiry is at an end.'").

### C.  The Subpoena To Mr. Comey Is Absolutely Protected By The Clause.

Mr. Comey's motion to quash is squarely foreclosed by binding Supreme Court precedent, specifically *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491 (1975).  *Eastland* involved an investigation of various activities of the United States' Serviceman's Fund, Inc. ("USSF") to determine whether they were potentially harmful to the morale of the U.S. Armed Forces.  *Id.* at 493.  As a part of the investigation, a congressional committee issued a subpoena to USSF's bank seeking all records involving its accounts.  *Id.* at 494.  USSF and two of its members brought an action against the Chairman, Members, and Chief Counsel of the committee

to enjoin implementation of the subpoena on First Amendment grounds.  *Id.* at 495.  The Supreme Court squarely and unequivocally rejected the notion that a congressional subpoena is subject to a motion to quash.  *See id.* at 512.

In determining that the issuance of a congressional subpoena is a legislative act and, therefore, absolutely privileged under the Speech or Debate Clause, the *Eastland* Court explained that "the power to investigate is inherent in the power to make laws" and "[i]ssuance of subpoenas... [is] a legitimate use by Congress of its power to investigate."  *Id.* at 504 (citation omitted).   Accordingly, the Court concluded that "the Speech or Debate Clause provides complete immunity for the Members for issuance of this subpoena."  *Id.* at 507.

*Eastland* also confirms the exceedingly limited role of the judiciary in determining whether a congressional committee's issuance of a subpoena involves legislative matters protected by the Speech or Debate Clause.  "The courts should not go beyond the narrow confines of determining that a committee's inquiry may fairly be deemed within its province." *Id.* at 506 (quoting *Tenney*, 341 U.S. at 378); *see also United States v. Biaggi*, 853 F.2d 89, 103 (2d Cir. 1988).  The *Eastland* Court made clear that the only permissible judicial inquiry was a deferential assessment of whether "the investigation upon which the [Committee] had embarked concerned a subject on which 'legislation could be had.'"  421 U.S. at 506.  Finally, *Eastland* "illustrates vividly the harm that judicial interference may cause."  *Id.* at 511.  The Speech or Debate Clause "was written to prevent the need to be confronted by such 'questioning' and to forbid invocation of judicial power to challenge the wisdom of Congress' use of its investigative authority."  *Id.*

Here, there can be no question that the subpoena to Mr. Comey was issued in furtherance of the Committee's investigation concerning "a subject on which 'legislation could be had.'"  *Id.*

at 506.  Indeed, Mr. Comey concedes as much, admitting that "the FBI and DOJ are appropriately subject to congressional oversight" and that "the subject matters of the Joint Committees' Investigation are appropriate subjects of a proper investigation."  Mot. to Quash at 4.  That admission should be the end of the matter, because it conclusively establishes that the Committee's subpoena relates to a subject on which legislation could be had and is thus immune from challenge by virtue of the Speech or Debate Clause.

In any event, Mr. Comey was correct to volunteer these fatal concessions.  The Committee has broad legislative jurisdiction over federal law enforcement agencies and activities, and could devise legislation relating directly to the subject matter of this investigation. Indeed, various legislative proposals have been proposed in recent Congresses to address aspects of the issues raised by this investigation, including but not limited to reforms of national security laws such as the Foreign Intelligence Surveillance Act, as well as modifications to laws governing the FBI's investigative procedures.  Somers Decl.¶ 4.  To effectively consider such legislative proposals, the Committee must gather information so that it can make informed decisions about the need for legislative action and, where appropriate, the content of such legislation.  This information-gathering lies at the very heart of the "sphere of legitimate legislative activity," *Eastland*, 421 U.S. at 503.  *See, e.g.*, *id.* at 504 ("The power to investigate … plainly falls within that definition [of legitimate legislative activity]."); *Biaggi*, 853 F.2d at 103; *United States v. Dowdy*, 479 F.2d 213, 224 (4th Cir. 1973).[6]

---

[6] Congressional investigative activities need not result in the passage of legislation in order to enjoy the full protection of the Speech or Debate Clause.  Information-gathering in furtherance of possible legislation is protected whenever the subject of the inquiry is "one 'on which legislation could be had,'" *Eastland*, 421 U.S. at 504 n.15 (quoting *McGrain*, 273 U.S. at 177), regardless of whether legislation is actually produced, *see id.* at 509 ("Nor is the legitimacy of a congressional inquiry to be defined by what it produces.  The very nature of the investigative function – like any research – is that it takes the searchers up some 'blind alleys' and into

Mr. Comey's baseless allegations that Committee Members are improperly "leaking" witness testimony for the purpose of gaining "partisan advantage," Mot. to Quash at 6, 8, provide no basis for evasion of the absolute immunity afforded by the Speech or Debate Clause.   As discussed above, the Speech or Debate Clause bars judicial "inquiry into … the motivation for [legislative] acts." *Helstoski*, 442 U.S. at 489.  Claims of "unworthy purpose do[] not destroy the privilege." *Tenney*, 341 U.S. at 377.  Were mere allegations such as Mr. Comey's sufficient to abrogate the absolute privilege afforded by the Clause, then, as the Court in *Eastland* observed, "the Clause simply would not provide the protection historically undergirding it." *Eastland*, 421 U.S. at 509.

In fact, under *Eastland*, even a claim that "the purpose of the subpoena was to 'harass, chill, punish and deter' [witnesses] in the exercise of their First Amendment rights" does not override the absolute protections of the Speech or Debate Clause.  421 U.S. at 509.  Expressly rejecting the "theory … that once it is alleged that First Amendment rights may be infringed by congressional action the Judiciary may intervene to protect those rights," the Supreme Court held that any such "approach … ignores the absolute nature of the speech or debate protection and our cases which have broadly construed that protection." *Id*. at 509-10 (footnote omitted).

Finally, Mr. Comey errs in relying on contempt cases such as *Watkins v. United States*, 354 U.S. 178 (1957). *See* Mot. to Quash at 5-6.  Those cases involved prosecutions brought by the Executive Branch in federal court against recalcitrant witnesses charged with contempt of Congress; they did not implicate the Speech or Debate Clause at all, since no relief was sought against any congressional parties.  Accordingly, they are entirely inapposite.

---

nonproductive enterprises.  To be a valid legislative inquiry there need be no predictable end result.").

Indeed, the *Eastland* Court held that "[d]ifferent problems were presented [in those cases] from those here," because "those cases did not involve attempts by private parties to impede congressional action where the Speech or Debate Clause was raised by Congress by way of defense." 421 U.S. at 509 n.16.  As the Court explained, in contempt cases it may be appropriate to "balanc[e] First Amendment rights against public interests," but "[w]here we are presented with an attempt to interfere with an ongoing activity by Congress, and that activity is found to be within the legitimate legislative sphere, balancing plays no part." *Id.*  Instead, because "[t]he speech or debate protection provides an absolute immunity from judicial interference" in this context, any "[c]ollateral harm which may occur in the course of a legitimate legislative inquiry does not allow us to force the inquiry to 'grind to a halt.'" *Id.* (quoting *Hutcheson v. United States*, 369 U.S. 599, 618 (1962)).

Accordingly, because the issuance of the subpoena was a legitimate legislative act, the Committee is absolutely immune from suit and the motion to quash must be dismissed.

### III.  THE RULEMAKING CLAUSE PRECLUDES THIS ACTION

As noted above, Mr. Comey expressly concedes the validity of both the Committee's oversight authority and the subject matter of its investigation.  Mot. to Quash at 4.  In addition, he claims that he has no objection to providing to the Committee the information that it seeks. *Id.*  Accordingly, it appears that his only objection to the subpoena reduces to his disagreement with the specific procedures that the Committee has elected to use to obtain his testimony; namely, a deposition as opposed to testimony in a public hearing.  In addition to being precluded by the Speech or Debate Clause for all the reasons set forth above, this objection fails for an additional, independently sufficient reason.

Pursuant to the Constitution's Rulemaking Clause, "[e]ach House [of Congress] may determine the Rules of its Proceedings."  U.S. Const. art. I, § 5, cl. 2.  In accordance with that

express and exclusive constitutional grant of authority, the House of Representatives has

delegated the power to conduct depositions to its standing committees, including the Committee

on the Judiciary.  *See* H. Res. 5, § 3(b)(1) (115th Cong. 2017) ("[T]he chair of a standing

committee … upon consultation with the ranking minority member of such committee, may

order the taking of depositions, including pursuant to subpoena, by a member or counsel of such

committee.").

The Rulemaking Clause is a "broad grant of authority," *Consumers Union of U.S., Inc. v.*

*Periodical Correspondents' Ass'n*, 515 F.2d 1341, 1343 (D.C. Cir. 1975), and "a classic example

of a demonstrable textual commitment to another branch of government."  *Rangel v. Boehner*, 20

F. Supp. 3d 148, 168-69 (D.D.C. 2013), *affirmed on other grounds*, 785 F.3d 19 (D.C. Cir.

2015); *see also NLRB v. Canning*, 134 S. Ct. 2550, 2574 (2014) (noting "the Constitution's

broad delegation of authority to the Senate to determine how and when to conduct its business").

Accordingly, the rules adopted by the House are constrained only by constitutional prohibitions,

and are otherwise "absolute and beyond the challenge of any other body or tribunal."  *United*

*States v. Ballin*, 144 U.S. 1, 5 (1892).

Under these precedents, the Committee's decision to utilize its deposition procedures to

obtain testimony from Mr. Comey is one that the Constitution specifically vests exclusively in

the Legislative Branch and with which the courts have no authority to interfere at the behest of

private parties.  As the Supreme Court has emphasized, "all matters of method are open to the

determination of the house, and it is no impeachment of the rule to say that some other way

would be better, more accurate, or even more just."  *Ballin*, 144 U.S. at 5.  The Rulemaking

Clause establishes a "specific constitutional … status" for congressional rules, and "[i]n

deference to the fundamental constitutional principle of separation of powers, the judiciary must

take special care to avoid intruding into a constitutionally delineated prerogative of the Legislative Branch.'"   *Harrington v. Bush*, 553 F.2d 190, 214 (D.C. Cir. 1977).

For all the foregoing reasons, therefore, Mr. Comey's motion to quash should be dismissed.

## IV.   IN ANY EVENT, THE COMMITTEE'S SUBPOENA IS VALID

### A.   The Committee's Subpoena Seeks Information In Furtherance Of A Valid Legislative Purpose.

Mr. Comey cannot seriously contend that the Committee, with broad oversight and legislative responsibility over DOJ and the FBI, lacks a valid legislative purpose in examining the actions of those agencies in the run-up to the 2016 election.  Mr. Comey may disagree with the focus of the Committee's investigation and he may disagree with the views of the individual Members of the Committee, but he cannot dispute the authority of the Committee to conduct oversight into DOJ and the FBI.  In fact, he concedes, as noted above, that "the subject matters of the Joint Committees' Investigation are appropriate subjects of a proper investigation."  Mot. to Quash at 4.

Mr. Comey instead claims that the Committee's "closed interview condition" (i.e., a deposition – a routine discovery device expressly authorized by a vote of the full House pursuant to its constitutional rulemaking authority) portends a nefarious purpose because there have been, he warns, "leaks" of "secret testimony," as well as an attempt by elected political officers to secure "partisan advantage."  Mot. to Quash at 6, 8.  Simply put, Mr. Comey attempts to convert what he views as a distasteful discovery device into an improper legislative purpose.

As an initial matter, deposition testimony is not "secret," because there is no overarching requirement of confidentiality for Committee depositions in the House Rules, House deposition procedures, or Committee rules.  Mr. Comey is free to discuss any of his non-classified

deposition testimony publicly, as are the Committee Members.  In addition, Mr. Comey may not

avoid his deposition obligation by attacking the motives of the Committee Members.  That is

because "in determining the legitimacy of a congressional act," the courts "do not look to the

motives alleged to have prompted it."  *Eastland*, 421 U.S. at 508.  The Supreme Court has

expressly warned against the danger of courts interfering in congressional investigations on the

basis of allegations like those advanced by Mr. Comey:  "If the mere allegation that a valid

legislative act was undertaken for an unworthy purpose would lift the protection of the Clause,

then the Clause simply would not provide the protection historically undergirding it."  *Id.* at 508-

09.  Mr. Comey is free to publicly denounce the allegedly "partisan" motivations of elected

officials, but he cannot thereby empower the Judicial Branch to interfere with a constitutionally

authorized congressional investigation.

  Finally, Mr. Comey's concern that other witnesses have been "unfairly prejudiced" by

"leaks and related comments" without the "full scope" of the testimony known to the public

certainly makes no sense in Mr. Comey's case.  Mot. to Quash at 8.  The Committee has made

clear to Mr. Comey's counsel that it will promptly provide him with a copy of Mr. Comey's

deposition transcript as soon as it is available.  Somers Decl. ¶ 14.  The Committee anticipates

providing the transcript within 24 hours after the conclusion of the deposition, an

accommodation that has been offered to other witnesses also.  Somers Decl. ¶ 14.  Mr. Comey is

free to publicly release the deposition transcript upon its receipt.  Mr. Comey is also free to

immediately disclose his testimony after he leaves the deposition room.  If the American people

are clamoring for the "full scope of [his] testimony," as Mr. Comey contends, Mot. to Quash at

4, he may use his considerable public platform and media contacts to disclose that testimony and

provide any allegedly necessary context for the "false political narrative" he fears.  *See* Mot. to

Stay at 3; *see also* James Comey (@Comey), Twitter, https://twitter.com/Comey (1.12 million

followers for @Comey account) (last visited Nov. 30, 2018).

> ### B.     The Committee's Subpoena Is Fully In Accordance With House And Committee Rules.

Mr. Comey curiously claims, without citation to any apposite authority, that "secret

interviews" are a violation of House Rules.  Mot. to Quash at 8-9.  Mr. Comey's entire argument

rests on what can only be characterized as an intentional misreading of House Rules and

procedures, conflating the Rules governing hearings with the procedures governing depositions.

*See* Somers Decl. ¶ 15.  As an initial matter, House committees regularly conduct closed

interviews of witnesses.  With respect to depositions specifically, as discussed in Part III, the

House has delegated "the taking of depositions, including pursuant to subpoena," to its standing

committees and that such depositions "shall be subject to regulations issued by the chair of the

Committee on Rules."  H. Res. 5, § 3(b), 115th Cong. (2017).  The regulations issued by the

Committee on Rules provide that depositions are closed to the public.  *See* Somers Decl. Ex. H at

¶ 3 ("Observers … may not attend.").[7]

Even if there were any doubt about the question as to whether a House committee's

deposition must be conducted in public like a hearing and not a deposition (and there is truly no

ambiguity on this point), as explained above, courts lack the authority to second-guess the

Committee's interpretation and implementation of its own rules.  *See*, 144 U.S. at 5; *see also*

*United States v. Rostenkowski*, 59 F.3d 1291, 1306 (D.C. Cir. 1995) ("[T]he Rulemaking Clause

of Article I clearly reserves to each House of the Congress the authority to make its own rules,

and judicial interpretation of an ambiguous House Rule runs the risk of the court intruding into

---

[7] The regulations further provide that transcripts shall be made available to witnesses; witnesses may propose changes to transcripts; and that the release of transcripts shall occur on consultation with the minority or by committee vote, as necessary.  Somers Decl. Ex. H at ¶¶ 8, 10.

the sphere of influence reserved to the legislative branch under the Constitution.").  Here, the Committee has determined that its deposition will be conducted like most depositions – in private.  Mr. Comey's belief that the Committee must interpret the House Rules and regulations differently is both non-justiciable and wrong.

## V.   THE COMMITTEE'S SUBPOENA SERVES THE PUBLIC INTEREST

For the reasons explained above, this Court lacks jurisdiction to grant Mr. Comey relief, including a stay his deposition.[8]  In any event, it is patently absurd to suggest that Mr. Comey will suffer "significant prejudice" where he is free to discuss his testimony in public and the Committee will, as discussed above, provide him with a full transcript of his testimony within 24 hours.

The public interest strongly compels denial of Mr. Comey's attempt to interfere with the impending conclusion of this important congressional investigation.  Over the past thirteen months, the Committee has conducted an exhaustive review of the actions of DOJ and the FBI.  The Committee has interviewed numerous officials and carefully reviewed a large number of records from the Executive Branch.  Somers Decl. ¶ 5.  To complete its investigation and prepare its public report, the Committee now seeks to interview Mr. Comey, who was the Director of the FBI during the entire time period encompassed by its investigation.  Somers Decl. ¶ 9.  This interview could not realistically have occurred at an earlier stage of the investigation, because the

---

[8] Mr. Comey cites *Comm. on the Judiciary v. Miers*, 542 F.3d 909 (D.C. Cir. 2008), for the proposition that courts may stay enforcement of congressional subpoenas, but that case is wholly inapposite, as the Speech or Debate Clause was inapplicable there because the Committee had itself chosen to invoke the jurisdiction of the federal courts to address the Executive Branch's refusal to comply with a subpoena.  Moreover, that case involved an inter-branch clash implicating substantial separation-of-powers concerns under the Constitution that the court of appeals deemed sufficient to justify the extraordinary relief of a stay.  Here, by contrast, the Executive Branch is not a party to the case, and the only separation-of-powers principles at stake here compel judicial non-interference with an ongoing congressional investigation.

Committee's investigative work to this point was in anticipation of, and preparation for, its interview of the highest-ranking official at the FBI, namely, Mr. Comey.  Somers Decl. ¶ 6.

If Mr. Comey's deposition were to be stayed, it would have a profound impact on the Committee's investigation and prevent the Committee from providing a full accounting of DOJ's actions in 2016.  The Committee intends to issue a joint report (together with OGR) before the end of the 115th Congress – i.e., in *a few short weeks*.  Somers Decl. ¶ 9.  The Committee cannot reasonably complete its assessment of the 2016 actions of DOJ and the FBI without the testimony of Mr. Comey.  Somers Decl. ¶ 9.  Mr. Comey seeks to frustrate the Committee's completion of its legislative report by demanding (unlike every other former government official involved in the investigation) a public hearing, which requires an enormous amount of staff and Member time and is a decision vested in the sole and unreviewable discretion of the Committee.  At bottom, Mr. Comey seeks to obstruct this congressional investigation by preventing the Committee from issuing its final report.

The D.C. Circuit has squarely held that there is a "clear public interest in maximizing the effectiveness of the investigatory powers of Congress[,]" because "the investigatory power is one that the courts have long perceived as essential to the successful discharge of the legislative responsibilities of Congress[.]"  *Exxon Corp. v. FTC*, 589 F.2d 582, 594 (D.C. Cir. 1978) (citing *McGrain*, 273 U.S. at 177).  Interference with the Committee's exercise of its constitutional power of inquiry would directly harm the Committee's compelling interest in expeditious completion of this investigation, which involves matters of pressing national importance.  "For this court on a continuing basis to mandate an enforced delay on the legitimate investigations of Congress" based on nothing more than Mr. Comey's baseless "leak" concerns "could seriously

impede the vital investigatory powers of Congress and would be of highly questionable

constitutionality." *Exxon*, 589 F.2d at 588.

## CONCLUSION

Mr. Comey's procedurally defective, jurisdictionally improper, constitutionally infirm,

and patently frivolous request for an order staying or quashing the Committee's subpoena should

be denied.

Respectfully submitted,

*/s/ Thomas G. Hungar*
THOMAS G. HUNGAR (DC Bar #447783)
  *General Counsel*
TODD B. TATELMAN (VA Bar #66008)
  *Deputy General Counsel*
KIMBERLY HAMM (DC Bar #1020989)
  *Associate General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C. 20515
(202) 225-9700 (telephone)
(202) 226-1360 (facsimile)
Thomas.Hungar@mail.house.gov

*Counsel for the Committee on the Judiciary*
*of the U.S. House of Representatives*

November 30, 2018

## CERTIFICATE OF SERVICE

I certify that on November 30, 2018, I filed the foregoing document by the court's

CM/ECF system, which I understand caused it to be served on all registered parties.


*/s/ Kimberly Hamm*
Kimberly Hamm